IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TYRONE ROBINSON,

                Petitioner,              OPINION AND ORDER

    v.                                       17-cv-750-wmc

REED RICHARDSON, Warden,
Stanley Correctional Institution,

                Respondent.

Tyrone Robinson, an inmate at Stanley Correctional Institution, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 and paid the $5 filing fee. The petition is now before the court for preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases. In conducting this review, the court has considered the petition and its attachments, Robinson's supporting brief, the decisions of the Wisconsin Court of Appeals on his direct appeal, *State v. Robinson*, 2014 WI App 1, ¶ 8, 352 Wis. 2d 245, 841 N.W.2d 580 (unpublished disposition), and his appeal from denial of his post-conviction motion brought under Wis. Stat. § 974.06, *State v. Robinson*, 2017 WI App 21, ¶ 2, 374 Wis. 2d 437, 896 N.W.2d 391 (unpublished disposition). Because these materials show plainly that Robinson is not entitled to relief, his petition will be dismissed.

BACKGROUND[1]

Robinson's conviction arose from events that took place during the night and early

---

[1] The following facts are drawn from the materials cited above, particularly previous state appellate court decisions.

morning hours of November 21 and 22, 2009. Robinson was later charged in a criminal complaint filed in Dane County Circuit Court with committing repeated sexual assaults of the same child, who was then 15 years old; kidnapping; and felony intimidation of a victim.

The victim described to police a number of sex acts that Robinson forced her to perform in the back of his van, and said he threatened to kill her if she told anyone about his actions. Law enforcement also obtained DNA evidence from the victim, Robinson and his van. The state crime lab issued a report finding that stains in the van contained Robinson's sperm, and the victim's DNA was found under Robinson's fingernails and in the van. A swab of the inner front of Robinson's boxer shorts further revealed a DNA mixture with at least one female and one male contributor. The lab concluded that the victim here was the source of the major female DNA component, while Robinson was a possible male contributor, finding (1) "[t]he probability of randomly selecting an unrelated [female] individual that could have contributed to this mixture profile is approximately" 1 in 59,000, and (2) male DNA matching Robinson's profile found inside the victim's underwear was shared by 73 out of 14,540 males.

After the state crime lab released its findings, Robinson agreed to plead no contest to one count of second-degree sexual assault of a child and one count of false imprisonment. By agreeing to plead to one count of sexual assault of a child, Robinson avoided facing trial on the charge of repeated sexual assaults of a child, which carried a 25-year mandatory minimum prison sentence. The plea hearing was on March 1, 2010. On May 7, 2010, the court sentenced Robinson to 17 years of initial confinement to be followed by 13 years of extended supervision.

Robinson was appointed a new lawyer for the purpose of pursuing post-conviction relief, who moved under Wis. Stat. § 974.02 to withdraw his plea on the grounds that it was not knowing and voluntary due to defects in the plea colloquy. The only other ground raised in that motion was for sentencing relief on the basis of the state crime lab's own DNA analysis, which petitioner argued proved that it was extremely unlikely that he had sexual intercourse with the victim. After considering the testimony of Robinson and his original counsel, the trial court denied the motion.

On November 27, 2013, the Wisconsin Court of Appeals affirmed Robinson's conviction; the Wisconsin Supreme Court then denied his petition for review on June 12, 2014. Robinson's conviction became final 90 days later, on September 10, 2014. *See Anderson v. Litscher*, 281 F.3d 672, 674-675 (7th Cir. 2002) (time for seeking direct review under § 2244(d)(1)(A) includes 90-day period in which prisoner could have filed petition for writ of certiorari with United States Supreme Court).

On October 5, 2015, a little more than one year after his direct appeal rights had been exhausted, Robinson filed a *pro se*, post-judgment motion for relief under Wis. Stat. § 974.06, Wisconsin's collateral attack statute. This time Robinson argued that his trial counsel had been ineffective in failing to adequately explain the crime lab's actual findings or do follow up on potentially exculpatory discovery and that his post-conviction counsel was ineffective for failing to raise these same claims on direct appeal. His primary claim was that his trial lawyer had "provided gross misadvice when he misinformed Robinson that his semen had been found in the alleged victim's underwear," a fact he claimed was material to his decision to enter a plea. *Robinson*, 2017 WI App 21, at ¶6. Robinson also

3

claimed that trial counsel had provided ineffective assistance by failing to procure exculpatory video surveillance recordings or interview additional witnesses. The circuit court denied petitioner's motion without an evidentiary hearing, finding that the record established conclusively that Robinson was not entitled to relief. Among other things, the court noted that Robinson had testified at the original postconviction hearing "that he chose to plead in order to avoid the mandatory minimum penalty." *Id*. ¶ 7.

The Wisconsin Court of Appeals affirmed the circuit court's decision, reviewing each of Robinson's claims of ineffective assistance of trial counsel and finding them without merit. *Robinson*, 2017 WI App 21, at ¶¶8-12. In particular, the court found that the record refuted Robinson's assertions that (1) his trial lawyer told him that his semen was found inside the victim's underwear and (2) this affected his decision to enter a plea. Specifically, the court noted that Robinson's lawyer had introduced the crime lab report as a defense exhibit at sentencing to demonstrate the lack of inculpatory DNA findings, and "[a]s plain as day . . . told the sentencing court that Robinson's semen was not detected in *either* his boxers or the victim's underwear." *Robinson*, 2017 WI App 21, ¶ 8. The court was unmoved by Robinson's claim that he was "too overmedicated to think clearly or to hear trial counsel's sentencing argument," noting that: (1) when he entered his plea, he denied that his medication affected his ability to understand what he was doing, *id*. ¶ 9; (2) when Robinson was later represented by post-conviction counsel and "was by his own admission properly medicated and clear headed," he filed a postconviction motion that sought plea withdrawal only on the ground of a defective colloquy, *id*. ¶ 10; and (3) at his original post-conviction hearing, Robinson complained that he was misinformed that the

4

victim's DNA was found in the front of his boxer shorts, and "[t]hough he emphasized his newfound familiarity with and understanding of the crime lab report," he still did not claim that he was misinformed by his counsel as to whether or not his semen was found in the victim's underwear. *Id.* ¶ 11.

The Wisconsin Court of Appeals further found that the circuit court had properly denied Robinson's remaining claims without an evidentiary hearing. *Id.* ¶ 12. Addressing Robinson's claim that his trial lawyer was ineffective for failing to procure other exculpatory video surveillance records, the court noted that not only was Robinson aware that such recordings might exist when he entered his plea, but any claim of prejudice was purely speculative because Robinson "cannot establish that the recordings actually exist, much less their exculpatory value." *Id.* ¶ 12. Likewise, the court found that Robinson failed to show any prejudice from his lawyer's claimed failure to interview certain witnesses. *Id.*

Finally, with respect to these last two claims, the Wisconsin Court of Appeals found that they were procedurally barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994), a decision prohibiting a defendant from raising new issues in a Wis. Stat. § 974.06 motion absent sufficient reason. The court observed that in particular, while acknowledging Robinson had asserted the claim that his post-conviction counsel was ineffective as the reason he failed to assert his claims earlier, Robinson had failed in his Wis. Stat. § 974.06 motion to allege with particularity how post-conviction counsel's conduct was deficient or prejudicial. *Id.* All Robinson said in his motion was that his post-conviction lawyer had failed to raise the issues, which was not enough to

overcome the strong presumption that post-conviction counsel rendered effective assistance. *Id*.

The Wisconsin Supreme Court denied Robinson's petition for review on July 11, 2017. Robinson filed the instant petition for habeas corpus on September 29, 2017.

OPINION

Rule 4 of the Rules Governing Section 2254 Cases directs this court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or take other action. The court's initial review of habeas petitions requires an evaluation of whether petitioner has set forth cognizable constitutional or federal law claims, and whether petitioner has exhausted available state remedies. Further, the petition must cross "some threshold of plausibility" before the state will be required to answer. *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996).

From his petition and supporting brief, Robinson appears to be seeking habeas relief on three grounds: (1) the state violated Robinson's rights to due process when it failed to turn over potentially exculpatory evidence, namely gas station surveillance videotapes and the results of HIV/STD testing; (2) trial counsel provided ineffective assistance in violation of Robinson's Sixth Amendment right to counsel; and (3) postconviction counsel provided ineffective assistance. For the reasons set forth below, none of these grounds justify the

issuance of a writ in this case.[2]

I. **Due Process**

Robinson's claim for denial of due process must be dismissed because he makes *no* showing in his petition that the state actually possessed either the gas station videos or STD testing results, much less that those items would have been material to disproving his guilt or the basis for punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (suppression by prosecution of evidence favorable to accused upon request violates due process where evidence is material either to guilt or punishment, irrespective of good faith or bad faith of prosecution). Instead, Robinson merely speculates that these items "might" have been exculpatory, which is not enough to establish a plausible due process claim. *Id*.

II. **Ineffective Assistance of Trial Counsel**

Robinson next alleges that his trial counsel committed the following errors: (1) incorrectly advised Robinson that the crime lab report found Robinson's semen in the

---

[2] The petition also appears to be untimely. As noted above, Robinson's conviction became final on September 10, 2014. Under 28 U.S.C. §§ 2244(d)(1)(A) and 2254(d)(2), Robinson had one year from that date, or until September 10, 2015, to file either a federal habeas petition or a state court collateral proceeding that would have tolled the limitations period. Robinson did not file his § 974.06 motion in the state circuit court until October 5, 2015, 25 days after his one-year habeas clock expired. He then waited more than two months after the Wisconsin Supreme Court denied his petition for review to file this federal habeas petition.
 Ordinarily, this court will allow a petitioner the opportunity to show that his untimeliness should be excused on grounds of equitable tolling or actual innocence before the court enters an order dismissing the petition. It is unnecessary to do so in this case because even if the petition was timely, the grounds asserted for relief are plainly without merit.

7

victim's underwear; (2) failed to develop a defense that would discredit the victim's version of events with contradictory statements in the police reports and the state crime lab report, with a potential witness named Lakeem Allen, and with the gas station surveillance videotapes; and (3) failed to request a competency hearing before advising Robinson to enter a plea.

As a starting point, Robinson actually entered a "no contest" plea to the charges for which he stands convicted. This means that, with respect to his claims of ineffective assistance of counsel, Robinson must show "that there is reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). For example, where "the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence," a showing of prejudice "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. This assessment, in turn, depends largely on an evaluation of whether the evidence likely would have changed the outcome of a trial. *Id*.

### A. Alleged Misadvice Concerning Substance of Crime Lab Report

Robinson presented this same claim to the state courts in his Wis. Stat. § 974.06 petition. As discussed above, both the state circuit and appellate courts found the following facts of record wholly refuted Robinson's claim that his lawyer had misinformed him about the crime lab's finding of his semen in the victim's underwear. First, at sentencing, trial counsel told the court, *in Robinson's presence*, that Robinson's semen was

8

*not* detected in either his boxers *or* the victim's underwear. Second, although Robinson testified at his original post-conviction hearing that he had learned more about the crime lab report only after his plea and sentencing, he did not claim specifically that he had been misinformed that his semen was found in the victim's underwear before his plea, but only that he had been misinformed that the victim's DNA was found in the front of his boxer shorts. Third, "[i]t was only after the circuit court denied the postconviction motion and Robinson's convictions were affirmed on direct appeal that he alleged a new and different misunderstanding of the DNA report." *Robinson*, 2017 WI App 21, ¶11. Fourth and finally, the circuit court noted that Robinson affirmatively testified at his original postconviction hearing "that he chose to plead [no contest to a single count of sexual assault] in order to avoid the mandatory minimum penalty." *Id*. ¶ 7. For all these reasons, the Wisconsin courts found no truth to Robinson's claim that he had been misinformed as to the crime lab's findings, nor that this misinformation had been material to his decision to plead no contest.

In a habeas corpus proceeding brought under 28 U.S.C. § 2254, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1). Although Robinson asserts that the court of appeals' decision was erroneous and an unreasonable application of federal law, he does not point to any evidence, much less evidence that is clear and convincing, to rebut the state courts' *factual* determination that he had not been misinformed that his semen was found in the victim's underwear. Accordingly, this claim plainly lacks merit and will be dismissed.

B. **Failure to Investigate**

Broadly characterized as a failure to investigate, Robinson's second claim of ineffective assistance also falls short. Acknowledging there are various threads to this claim, Robinson basically alleges that his lawyer should have done more to contest the charges and challenge the victim's version of events. For example, Robinson points to inconsistencies between the victim's initial statements to police and other reports that he says his lawyer should have explored. In addition, he claims his lawyer should have interviewed an individual by the name of Lakeem Allen (whom the victim originally told her mother she had been with during the time of the sexual assaults) and should have procured the gas station videotapes.

Assuming for the sake of argument that trial counsel's performance was deficient, however, Robinson must still allege facts showing that the evidence he claims his lawyer should have investigated would have changed the outcome of a trial. As an example, consistent with the state court proceedings, Robinson does not even plead that the gas station video surveillance tapes existed, much less that they would have been exculpatory. Similarly, Robinson fails to allege that the witness he claims his lawyer should have interviewed would have provided exculpatory testimony. In light of these deficiencies, the state court of appeals found that Robinson had failed to show prejudice from his trial counsel's alleges failures to procure the video surveillance recordings or to interview certain witnesses. *Robinson*, 2017 WI App 21, ¶ 12.

Moreover, because that conclusion was based upon a proper understanding of controlling Supreme Court precedent *and* a reasonable assessment of the facts in light of

the evidence presented, Robinson's petition for habeas corpus on that ground cannot be granted. *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."); *Wood v. Allen*, 558 U.S. 290, 301 (2010) (state court's factual determinations are entitled to substantial deference and may not be superseded even if "[r]easonable minds reviewing the record might disagree" about the finding in question) (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)).

As for Robinson's claim that his lawyer should have "attack[ed] complainant's credibility" by exploring potential inconsistencies between the victim's statements and some of the evidence (dkt.#1-1, at 5), Robinson likely defaulted this claim altogether by failing to present it to the state courts in his Wis. Stat. § 974.06 motion. *See also Coleman v. Hardy,* 628 F.3d 314, 318 (7th Cir. 2010) (when a petitioner fails to raise a particular claim on direct appeal or in post-conviction proceedings, the claim is procedurally defaulted). In any case, it is plain from the allegations in the petition that this claim has no merit. First, Robinson does not aver that he was unaware of these "inconsistencies" at the time he decided to enter his guilty plea. Second, given the victim's detailed account of a series of brutal sexual assaults committed by Robinson, and the presence of incriminating DNA evidence found in Robinson's van, boxer shorts and under his fingernails, the minor inconsistencies that Robinson identifies in the reports would not likely have led to an acquittal at trial. Third, Robinson would have faced a 25-year

11

mandatory minimum prison sentence if convicted, which by his own admission he was trying to avoid, there is *no* reasonable basis to conclude that Robinson would have opted to go to trial but for the errors he alleges in his petition.

### C. Failure to Request Competency Hearing

Finally, Robinson now asserts that he was so overmedicated that he was incompetent to enter his original no contest plea, and that his lawyer had reason to know this. To be incompetent to stand trial the defendant must "lack[ ] the capacity to understand the nature and object of the proceedings against him [or her], to consult with counsel, and to assist in preparing [a] defense." *State v. Garfoot*, 207 Wis.2d 214, 222, 558 N.W.2d 626 (1997); Wis. Stat. § 971.13(1). Thus, a "person is competent to proceed if: (1) he or she possesses sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and (2) he or she possesses a rational as well as factual understanding of a proceeding against him or her." *Garfoot*, 207 Wis. 2d at 222, 558 N.W.2d 626.

As evidence that his lawyer should have questioned his competence, Robinson submits medical records from his prison file showing that he was evaluated at Dodge Correctional Institution on June 24, 2010, and found to have a "heavily sedated demeanor" and "an apparent toxic level of Depakote and a high level of lithium." (Dkt.#1-3, at 1-2). Robinson then makes the unsworn assertion that he told his trial lawyer that his medications were making it hard for him to focus on much of anything and that he asked his lawyer "to talk to someone about it." (Dkt.#1-1, at 10)

12

As an initial matter, Robinson acknowledges that he did not present this claim in his initial post-conviction motion brought under Wis. Stat. § 974.02, but claims this was because his post-conviction lawyer was ineffective. However, it does not appear that Robinson raised this claim in his *pro se* Wis. Stat. § 974.06 motion either, except as a response to the state's assertion that he was present at the sentencing hearing when his lawyer accurately summarized the evidence concerning the presence of semen in the victim's underwear, contrary to the same lawyer's summary Robinson claims he was given and relied upon fairly contemporaneously. *See Robinson*, 2017 WI App 21, ¶ 9. Thus, Robinson appears to have procedurally defaulted this claim by failing to give the state courts a meaningful opportunity to review it.

Even if not barred by procedural default analysis, Robinson is plainly not entitled to relief based on facts affirmatively pleaded in his petition and found in the court of appeals' decisions. As the court of appeals found, "Robinson told the plea-taking court that he understood all of the information in his plea questionnaire, his medication did not affect his ability to understand what he was doing at the plea hearing, he was able to make decisions about what was in his best interest, and he was thinking clearly at the time he entered his pleas." *Id*. At the evidentiary hearing on his first postconviction motion, Robinson further testified that when he entered a plea of second-degree sexual assault, he understood that he was pleading to having sex with a minor, that "sex" included various forms of penile penetration, hand to penis contact and finger to vagina contact, and "that he was pleading to having had sex in one way or another with the victim." *State v. Robinson*, 2014 WI App 1, ¶ 9.

The fact that Robinson was found to be overmedicated nearly four months later does not undo his own statements at his plea, which wholly support the state court's contemporaneous finding that he had a rational and factual understanding of the case against him and was able to consult with his lawyer. Moreover, for purpose of claiming ineffective assistance of counsel, Robinson presents no evidence that his *lawyer* had any reason at the time of the plea hearing to question Robinson's competence, unless the court were to credit Robinson's unsworn, self-serving assertion that on some unknown date Robinson told his lawyer that his medications were making it difficult for him to focus, which would still not be enough to overcome his sworn, in-court statements and the findings of the plea-taking court. 28 U.S.C. § 2254(e) (state court factual findings presumed correct absent clear and convincing evidence).

In sum, because it is plain from the petition and attachments that Robinson is not entitled to relief on a claim of ineffective assistance of trial counsel, it must be dismissed.

### III. Ineffective Assistance of Post-Conviction Counsel

Finally, Robinson claims that his post-conviction lawyer rendered ineffective assistance by failing to raise any of the foregoing issues in Robinson's initial, post-conviction motion. Because none of these claims have arguable merit for the reasons set forth above, and certainly were not clearly stronger than the issues counsel actually did raise, there is no merit to this claim either. *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.").

**IV. Certificate of Appealability**

If Robinson seeks to appeal this decision, he must first obtain a certificate of appealability. See 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability. A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For all the reasons just discussed, Robinson has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

ORDER

IT IS ORDERED that:

1. Tyrone Robinson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

2. A certificate of appealability under 28 U.S.C. § 2253(c) is DENIED.

Entered this 18th day of June, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge